FILED ENTERED
LODGED RECEIVED
MAY 26 2015
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Honorable Richard A. Jones

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> YUE WU, <br><br> Defendant. | NO. CR14-306RAJ <br><br> **PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Todd Greenberg, Assistant United States Attorney for said District, Defendant, YUE WU, and his attorney, Catherine Chaney, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the following charge contained in Count 1 of the Indictment, Conspiracy to Violate the Arms Export Control Act, in violation of Title 18, United States Code, Section 371. By entering this plea of guilty, Defendant hereby waives all objections to the form of the charging document and also waives any objection to venue. Defendant further

understands that before entering his plea of guilty, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of the offense of Conspiracy to Violate the Arms Export Control Act, in violation of Title 18, United States Code, Section 371, are as follows:

First, there was an agreement between two or more persons to violate the Arms Export Control Act, Title 22, United States Code, Section 2778(b)(2) and (c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1(a);

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements of the underlying offense of Violation of the Arms Export Control Act are as follows:

First, the defendant exported articles;

Second, the articles were listed on the United States Munitions List at the time of export;

Third, the defendant did so without obtaining a license from the State Department; and

Fourth, the defendant acted "willfully," that is, he was aware that it was unlawful to export the goods from the United States.

3. **The Penalties.** Defendant understands that the statutory penalties for the offense of Conspiracy to Violate the Arms Export Control Act, as charged in Count 1, are as follows: imprisonment for up to five (5) years, a fine of up to two hundred and fifty thousand dollars ($250,000.00), a period of supervision following release from prison of up to three (3) years, and a special assessment of one hundred dollars ($100.00). If

Defendant receives a sentence of probation, the probationary period could be up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of its conditions, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that in addition to any term of imprisonment and/or fine that is imposed, the Court may order him to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of his peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on his behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

5. **United States Sentencing Guidelines.** Defendant understands and acknowledges that, at sentencing, the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine his applicable Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

  d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

  6. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

  7. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case for Count 1:

   a. A base offense level of 26, pursuant to USSG § 2M5.2(a)(1).

   b. The United States acknowledges that if Defendant qualifies for an acceptance of responsibility adjustment pursuant to USSG § 3E1.1(a), and if the offense level is sixteen (16) or greater, his total offense level should be decreased by three (3) levels pursuant to USSG § 3E1.1(a) and (b), because he has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

   c. The parties agree they are free to argue the application of any other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

  8. **Sentencing Recommendation.** The government will recommend a sentence of not more than 24 months of imprisonment. Defendant is free to recommend any sentence. Defendant understands that the Court is not bound by the parties' recommendations.

//
//
//
//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. **Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offense.

   a. At all times relevant to the offense of conviction, YUE WU resided in the People's Republic of China. WU agreed with other persons located in China and elsewhere to attempt to acquire QA3000-030 accelerometers which are manufactured in the United States, and export the accelerometers to China.

   b. WU was aware that what he was doing was unlawful, and specifically that it was unlawful to export QA03000-030 accelerometers from the United States to China without an official U.S. government license. These accelerometers required a license from the State Department before they could have been lawfully exported from the United States. Such a license was required because the accelerometers constituted defense articles designated on the United States Munitions List, International Traffic in Arms Regulations. No license was obtained as part of the conspiracy.

   c. On or about January 25, 2012, WU and another person met with an undercover agent ("UC") in San Francisco, California, for the purpose of discussing WU's acquisition of QA3000 accelerometers for export to China. During the meeting, WU discussed the possibility of ordering thirty (30) QA3000-030 accelerometers from the UC. WU explained that he was attempting to acquire the accelerometers on behalf of a "customer" in China.

   d. During January and February 2012, WU and the UC exchanged numerous emails, discussing the fact that it was illegal to export the QA3000-030 accelerometers from the United States to China without a license from the U.S. State Department, and that such a license would not be issued. On or about February 10, 2012, the UC told WU: "Bottom line – we cannot legally ship these items to an end user in China."

   e. On or about February 12, 2012, WU sent an email to the UC proposing that the QA3000-030 accelerometers be concealed in housing and exported to China, in order to evade United States export restrictions. On or about February 21, 2012, WU further explained his plan as follows: "The idea is to use the name of the housing instead of the accelerometers for export after the accelerometers are assembled into the housing. Then, we should not mention the accelerometers on the shipping documents . . . I am pretty reluctant to propose this but I have no other solutions. This business could bring nice profits for you but also risks."

Plea Agreement (United States v. Wu, CR14-306RAJ) - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f. On or about February 29, 2012, WU spoke with the UC over the telephone and confirmed his plan to have the UC conceal the QA3000-030 accelerometers in the housing to evade United States export restrictions.

g. On or about March 5, 2012, WU sent the UC (via email) schematics for the construction of the housing that was intended to conceal the QA3000-030 accelerometers for export to China. WU explained that he obtained the schematics from his "customer" in China.

h. In or about March 2012, WU and the UC exchanged several emails and spoke on the telephone negotiating the price for the QA3000-030 accelerometers, and discussing various alternative methods by which the accelerometers could be surreptitiously exported to China. During a telephone conversation, WU confirmed that his "customer" in China understood that the transaction involved "risks" because it was illegal to export the QA3000-030 accelerometers to China. WU further stated that he and his "customer" were not willing to travel to the United States to inspect the accelerometers because that was "too risky for us."

i. During the Fall of 2012, in an attempt to evade United States export laws, WU suggested that the UC could ship the QA3000-030 accelerometers to WU's associate in Switzerland, who, in turn, would trans-ship the accelerometers into China. In one email, WU explained the purpose of this plan as follows: "There is definitely no legal way to ship [the] accelerometers to China. That's why I asked you to forget the end user in China. You know only the customer in Switzerland and leave the rest for [them] to handle."

j. On or about March 6, 2013, WU spoke to the UC over the telephone. WU explained that trans-shipping the QA3000-030 accelerometers through Switzerland and into China was no longer an option, because his associate in Switzerland "wants everything to be legal and that's a problem." WU further told the UC that, "The only way to do this business . . . you have to smuggle the products from your end to our end. The only way." On March 12, 2013, the UC mentioned the possibility of exporting the accelerometer to China by trans-shipping it through Malaysia.

k. On or about August 18, 2013, WU sent the UC an email requesting an updated price quote for QA3000-030 accelerometers. On or about September 24, 2013, the UC emailed WU a quote of $38,120.00 per accelerometer.

l. On or about December 16-17, 2013, WU caused a wire transfer of $38,120.00 to be sent from Hong Kong to the UC in Seattle, Washington, as payment for one QA3000-030 accelerometer that WU intended to export to China. On or about

December 16, 2013, WU sent an email to the UC explaining that the funds were provided by his "customer" in China.

  m. During the Spring of 2014, WU exchanged several emails with the UC, discussing how to get the purchased QA3000-030 accelerometer from the United States to China. Among other things, they discussed the possibility of exporting the accelerometer to an intermediate country such as Malaysia or South Africa, and then surreptitiously trans-shipping the accelerometer into China.

  10. **Forfeiture Agreement.** Defendant agrees not to contest the forfeiture of the funds used to facilitate the offense of conviction, that is, the $38,120.00 seized by law enforcement on December 17, 2013.

  11. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees to dismiss Count 2 of the Indictment and not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant. Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

  12. **Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, including the offense to which Defendant is pleading guilty, and some offenses make

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney and the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his mandatory removal from the United States.

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted. Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that is in violation of his conditions of his release (examples of which include, but are not limited to: obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

14. **Waiver of Appeal.** As part of this Plea Agreement and on the condition that the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) that is determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a. any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

b. any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

Furthermore, this waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15. **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter this plea of guilty.

//

//

16. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

17. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 26th day of May, 2015.

YUE WU
Defendant

CATHERINE CHANEY
Attorney for Defendant

TODD GREENBERG
Assistant United States Attorney